UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10038-RWZ

STEPHEN B. COMLEY

v.

TOWN OF ROWLEY,
TOWN OF ROWLEY BOARD OF SELECTMEN,
JOSEPH PERRY, Individually and as Selectman,
ROBERT SNOW, Individually and as Selectman,
CLIFFORD PIERCE, Individually and as Selectman,
G. ROBERT MERRY, Individually and as Selectman,
DAVID PETERSEN, Individually and as Selectman, and
COMMONWEALTH OF
MASSACHUSETTS DEPARTMENT
OF TRANSPORTATION/HIGHWAY DIVISION

MEMORANDUM OF DECISION

October 31, 2017

ZOBEL, S.D.J.

Plaintiff Stephen B. Comley brings this 42 U.S.C. § 1983 lawsuit against the Town of Rowley ("Town"), the Town's Board of Selectmen ("Board"), five named selectmen in their individual and official capacities (collectively, "Town defendants"), and the Massachusetts Department of Transportation ("MassDOT") to vindicate his rights to free speech and equal protection. He alleges that defendants removed his

political signs posted on Town property and along state highways but allowed others' signs to remain. Defendants move to dismiss and for judgment on the pleadings.

I.      Factual Background

The facts are recited as alleged in plaintiff's complaint (Docket # 1-2). See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 5 (1st Cir. 2011).

Comley is a Rowley resident and longtime nuclear safety activist dedicated to raising awareness of the dangers he perceives from the nearby Seabrook Power Plant. To that end, he posted signs on public property throughout the Town in 2015 urging attention to his concerns and related issues.[1] At a Town Meeting in May 2015, he moved that the Board request the United States Nuclear Regulatory Commission to hold a public hearing concerning Seabrook's evacuation plans.

Following that meeting, plaintiff's signs "began to disappear" from their locations around Town (Complaint, at ¶ 16), about which he pleads nothing beyond that they "were posted in areas and locations customarily used by other individuals without restraint relating to elections [and] to express political views." Id., at ¶ 15. Plaintiff subsequently discovered that the Board had "instructed or vicariously instructed departments of the town to remove his signs," id., at ¶ 16, even as "other similar signs of political nature posted by other individuals or citizens of the town were not so removed." Id., at ¶ 17. MassDOT also removed plaintiff's signs from Route 1A and

---

[1] Specifically, one of plaintiff's signs exhorted then-President Obama to "Protect U.S. Democracy" and "investigate the Nuclear Regulatory Commission," and another advertised plaintiff's own candidacy for the presidency. Ex. 2 to Complaint.

2

Route 1 in the Towns of Ipswich, Rowley, Newbury, Newburyport, and Salisbury. Id., at ¶ 23. However, the complaint is devoid of any detail as to that conduct.

At a Board meeting in November 2015,[2] defendant Merry explained that the Board had received complaints about plaintiff's signs and opined that any signs posted on utility poles violated state law. See Docket # 39-2, at 4. Defendant Petersen likewise assumed that the signs were unlawful, saying, "If the signs are gone, they're gone, and we can't waste time tracking down signs put up illegally on Town property." Id.

Plaintiff brought the present action in Essex Superior Court. Docket # 7. The complaint alleges five counts of violations of his constitutional rights to free speech and equal protection under 42 U.S.C. § 1983 (Counts I–V), one count of civil conspiracy against Town defendants (Count VI), and one count of violation of 700 C.M.R. 3.02(2)(b)(4) against MassDOT. Town defendants removed the case to federal court on January 9, 2017, Docket # 1, and now move for judgment on the pleadings. Docket # 33. MassDOT, which had not yet been served at the time of removal, neither consented to nor joined the removal, but now moves to dismiss. Docket # 31.

---

[2] Plaintiff attached the minutes for two Board meetings, including the November 9, 2015, meeting, to his opposition to Town defendants' motion for judgment on the pleadings. Docket # 39-2. Materials offered in support of or opposition to a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c) may be considered without converting the motion to one for summary judgment where the authenticity of the content is undisputed; where the parties did not object to the court's consideration of the content; or where the content is consistent with the pleadings. See Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993). Here, as in Watterson, "all or most of the above-mentioned elements are present. Plaintiff[], moreover, introduced the documents [himself], in order to bolster [his] argument against defendants' motions to dismiss." Id. (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff . . . Where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."), cert. denied, 503 U.S. 960 (1992)).

3

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion. Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005).

For purposes of a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52–53 (1st Cir. 2013). In addition to facts and documents included in or incorporated into the complaint, the court "may also consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

## III. Analysis

### A. Constitutional Claims (Counts I–V)

In Counts I through V, plaintiff alleges a variety of somewhat duplicative constitutional claims. Count I alleges free speech violations under the First Amendment and/or the Massachusetts Declaration of Rights, and Count II invokes these same rights

4

in stating a § 1983 violation. Because the latter is the appropriate cause of action for the former violations, I treat them as one claim under Count II. Counts III and IV seek injunctive relief and attorneys' fees, which do not amount to independent causes of action. See Payton v. Wells Fargo Bank, N.A., No. 12-11540, 2013 WL 782601, at *6 (D. Mass. Feb. 28, 2013) ("[I]njunctive relief is not a stand-alone cause of action under Massachusetts or federal law."). Count V, styled a claim for "selective enforcement," is ambiguously pleaded but appears to invoke the Fourteenth Amendment's equal protection clause. Cf. McGuire v. Reilly, 386 F.3d 45, 62–63 (1st Cir. 2004) (noting few substantive differences between oft-confused doctrines of First Amendment viewpoint discrimination and Fourteenth Amendment selective enforcement).

Whether under the First or Fourteenth Amendment, to prevail on a § 1983 claim, a plaintiff must plausibly allege both the violation of a constitutional right and that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A public employee generally "acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 50.

### 1. First Amendment Viewpoint Discrimination

Plaintiff alleges that in 2015, he "and other citizens of the town" posted political signs on public property throughout the Town of Rowley. Complaint, at ¶ 14. Claiming that Town defendants "instructed or vicariously instructed departments of the town" to remove his signs,[3] plaintiff maintains that "other similar signs of political nature posted

---

[3] In his opposition to Town defendants' motion to dismiss, plaintiff relies on a number of emails to the Board from Town residents complaining about his signs. Plaintiff's complaint nowhere makes reference to these emails or their contents, nor were they attached to the complaint or to any

by other individuals . . . were not so removed." Id., at ¶¶ 16–17. In support, he attached as Exhibit 2 to his complaint seven photographs – the first showing an example of his own signs, and the remaining six purporting to show others' signs that were not removed.[4] He further avers that this court may take judicial notice of the ubiquity of political signage on public property during election season.

Although plaintiff offers no facts specifying the locations of his signs, I accept as true for this analysis his allegation that all signs were removed from public property. It is "well settled that the government need not permit all forms of speech on property that it owns and controls. The government, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." Del Gallo v. Parent, 557 F.3d 58, 68 (1st Cir. 2009) (citations omitted). Plaintiff does not challenge that power itself, but rather the discriminatory manner with which he argues it was applied in removing only his signs. "The essence of a viewpoint discrimination claim is that the government has preferred the message of one speaker over another," in violation of the First Amendment. McGuire, 386 F.3d at 61–62 (citing

---

subsequently filed motions. The emails appear at Docket # 7 only as part of the state court record entered by defendants, but plaintiff variously mischaracterizes their status in the record. He first refers to them as attached to Exhibit 3 to the complaint. Docket # 39, at 3. That exhibit is a letter from plaintiff to the Board dated October 27, 2015, listing seven enclosures, none of which were attached to the complaint and which in any event do not include the emails. Ex. 3 to Complaint, at 24. He also cites to the emails as "Ex. 5 to the Verified Complaint," Docket # 39, at 9–10, 17, but that complaint includes only three exhibits. At the motion hearing on September 19, 2017, plaintiff's counsel represented that these emails were "attached to the complaint," but argued that I need not rely on them to find in his favor since ¶¶ 14–16 of the complaint alleged the relevant facts. Accordingly, and since the emails are not public records undisputed by the parties, I exclude them as outside the pleadings. See Watterson, 987 F.2d at 3–4.

[4] Plaintiff's signs appear to be in a residential location, close to a driveway. The other photographs show the following signs in roadside locations whose public or private character is unclear: "Kevin Coppinger for Sheriff"; "Bernie 2016"; "Archer for Sheriff"; "Marks for Sheriff"; "Trump"; and a "2 for $4" Monster drinks advertisement, on what appears to be a utility pole in front of a gas station.

Members of the City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 804 (1984)). To prevail on this claim, plaintiff must show "a pattern of unlawful favoritism." Thomas v. Chicago Park Dist., 534 U.S. 316, 325 (2002) ("Granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional, but we think that this abuse must be dealt with if and when a pattern of unlawful favoritism appears").

Plaintiff has failed to plead sufficient facts in support of such a pattern. Although he contends that, following the May 2015 Town Meeting, his signs were removed while "other similar signs of political nature posted by other individuals . . . were not so removed," Complaint at ¶¶ 16-17, plaintiff's photographs of such other signs reveal remarkably little. Plaintiff has pleaded nothing about when the other signs were placed where or by whom. Even as to his own signs, the plaintiff does not specify where he posted them. In the absence of such information, it is impossible to conclude that defendants allowed some signs to remain in similar locations from which they removed plaintiff's signs, much less that they did so in a discriminatory manner.

### 2. First Amendment Retaliation

Although it is not precisely pleaded, plaintiff's First Amendment claim could alternatively be read to allege retaliatory removal of his signs following his Town Meeting motion for a public hearing on nuclear safety issues. "When a government actor retaliates against someone for exercising constitutionally protected First Amendment rights, that individual has a cognizable retaliation claim pursuant to § 1983. To make out a valid claim, a plaintiff must first show that his conduct was

7

constitutionally protected and, second, he must show proof of a causal connection between the allegedly protected conduct and the supposedly retaliatory response." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 141 (1st Cir. 2016) (citations omitted). "The defendant may then avoid a finding of liability by showing that 'it would have reached the same decision . . . even in the absence of the protected conduct.'" Powell v. Alexander, 391 F.3d 1, 17 (1st Cir. 2004) (quoting Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle, 429 U.S. 274, 287 (1977)).

Plaintiff's Town Meeting motion, as commentary on a matter of public concern, is clearly constitutionally protected speech.[5] See Najas, 821 F.3d at 141. Plaintiff has adduced no facts, however, to establish defendants' retaliatory motive. Instead, he implies causation from the basic chronology that his signs "began to disappear" after the May 2015 Town Meeting. Complaint, at ¶ 16. Although temporal proximity alone may sometimes suffice, it must generally be close. Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 16-17 (1st Cir. 2011). Here, plaintiff alleges nothing specific about when defendants first removed his signs, and in fact the record shows that his signs were disappearing well before the May 2015 meeting.[6] This cripples his effort to establish

---

[5] Plaintiff also argues that Town defendants were bound by his motion, which passed by unanimous vote, to make an official request of the Nuclear Regulatory Commission ("NRC") for a public hearing. See Complaint, at ¶ ¶ 10–13. Plaintiff has no standing to advance this argument, and in any event, Town defendants responded diligently. See Docket # 33-1 (Board-commissioned report of Town Fire Chief reviewing plaintiff's safety concerns); Docket # 33-2 (minutes for June 1, 2015, Board meeting to address plaintiff's motion; emergency management officials and state representatives in attendance); Docket # 33-4 (letter dated June 15, 2015 from Board to Congressman Seth Moulton, requesting that he contact the NRC on the Town's behalf and meet with plaintiff). See also Butler v. Town of East Bridgewater, 110 N.E. 2d 922, 925 (Mass. 1953) (reserving discretion in selectmen, who are duty-bound to avoid "unreasonable, arbitrary, whimsical, or capricious" action).

[6] In a letter dated October 27, 2015, plaintiff demands that the Board provide specific information about the Town's role in removing his signs. Ex. 3 to Complaint, at 20. He states that he and others complained of stolen signs to police, who began investigating "over a year" before the date of the letter. Id. He is also on the record as stating during a Board meeting on March 16, 2015, that he had "put

8

causation. See id.; see also Rubinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995) (plaintiffs' reliance on circumstantial evidence of allegedly retaliatory enforcement following protected speech is insufficient to support an inference of improper motive, particularly where some enforcement preceded the speech). It may well be that plaintiff intends more broadly to allege retaliation for his longstanding activism, but he has not so pleaded.

### 3. Fourteenth Amendment Selective Enforcement

Plaintiff brings a separate count for selective enforcement, apparently sounding in the Fourteenth Amendment's equal protection clause. "A claim for a 'class of one' equal protection violation is cognizable when—and only when—a plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir. 2008) (citations omitted). "In a class of one equal protection claim, proof of a similarly situated, but differently treated, comparator is essential. In particular, plaintiff[] must show an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself]. [He] must show that [he] engaged in the same activity . . . without such distinguishing or mitigating circumstances as would render the comparison inutile." Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014) (citations omitted).

Although plaintiff identified six other signs he claims were not removed, he has in no way substantiated how those signs are relevant comparators. See Najas, 821 F.3d

---

out many signs from Ipswich to Hampton and many have been stolen." Docket # 33-5, at 4.

at 144 (holding that it "does not cut it, even at the pleading stage," to offer comparators without explanation of how they are similarly situated); see also Freeman v. Town of Hudson, 714 F.3d 29, 39–40 (1st Cir. 2013) (complaint's "failure to do more than conclusorily state that the [plaintiffs] were both similarly situated to and treated differently from unspecified 'other contractors' is insufficient to survive the defendants' motion to dismiss"). Accordingly, his equal protection claim fails. See Harron v. Town of Franklin, 660 F.3d 531, 537 (1st Cir. 2011) (paucity of facts surrounding putative comparators fatal to equal protection claim).

Because plaintiff has failed to plausibly allege free speech or equal protection violations, I need not consider whether he has pleaded a basis for municipal liability under Monell v. New York City Department of Social Services, 436 U.S. 658, 98 (1978). See Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 640 n.4 (1st Cir. 2013) ("Policy or practice aside, a municipality cannot be liable for the actions of its officials under Monell if those actions inflicted no constitutional harm."). Town Defendants' motion for judgment on the pleadings (Docket #33) is GRANTED as to Counts I, III, IV, and V, and GRANTED WITHOUT PREJUDICE as to Count II.

The same analysis dooms plaintiff's even more barely pleaded claim against MassDOT which, as a state agent, is in any event immune from federal suit. See Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002) ("[S]tates are immune under the Eleventh Amendment from private suit in the federal courts, absent their consent."). MassDOT's motion to dismiss (Docket #31) is GRANTED as to Counts I, II, III, IV, and V.

### B. Count VI – Civil Conspiracy (Town Defendants only)

Plaintiff further claims that Town defendants' "collective acts and omissions represent a common design or agreement to violate [his] constitutional rights and/or under color of law selectively enforce applicable town policy, procedure or regulations against him." Complaint, at ¶ 43. Where he has not plausibly alleged a constitutional violation, any civil conspiracy claim based on such violations must also fail. See Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) ("[F]or a conspiracy to be actionable under section 1983 the plaintiff has to prove that there has been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws."). Accordingly, the motion for judgment on the pleadings (Docket #33) is GRANTED WITHOUT PREJUDICE as to Count VI.

### C. Count VII – "Regulatory Violation" (MassDOT only)

Finally, plaintiff alleges that, in removing his signs from alongside state highways, MassDOT violated 700 C.M.R. 3.02(2)(b)(4). Complaint, at ¶¶ 23, 45. That regulation provides, for signs "erected solely for and relating to public elections," an exemption to the permitting requirement for any sign along a state highway. The regulation does not, however, provide a private right of action, see Loffredo v. Ctr. for Addictive Behaviors, 689 N.E.2d 799, 803 (1998) ("[A] private cause of action cannot be inferred solely from an agency regulation"), and again, a state agency is not a proper defendant in federal court. See Wojcik, 300 F.3d at 99. Accordingly, the motion to dismiss (Docket # 31) is GRANTED as to Count VII.

## IV. Conclusion

Town defendants' motion for judgment on the pleadings (Docket # 33) is GRANTED as to Counts I, II, III, IV, V, and VI.  MassDOT's motion to dismiss (Docket # 31) is GRANTED as to Counts I, II, III, IV, V, and VII.  Judgment may be entered with prejudice for Town defendants on Counts I, III, IV, and V, and without prejudice for Town defendants on Counts II and VI.  Judgment may be entered with prejudice for MassDOT on Counts I, II, III, IV, V, and VII.

|  |  |
|---|---|
| October 31, 2017 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |